Carl S. ZILK and Flomatic Sales Corporation, an Oregon corporation, Plaintiffs,

v.

DEATON FOUNTAIN SERVICE, a partnership comprised of William F. Deaton and C. J. DeCeasare, and United California Bank, Defendants.

No. 41150.

United States District Court
N. D. California, S. D.

May 12, 1966.

Hoppe & Mitchell, San Francisco, Cal., with Carl Hoppe and James Mitchell, San Francisco, Cal., appearing for plaintiffs.

Karl Limbach, San Francisco, Cal., with Naylor & Neal, San Francisco, Cal., appearing for defendants.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

WOLLENBERG, District Judge.

This patent infringement suit was tried before a jury. After the conclu-

---

sion of the evidence, defendant moved pursuant to F.R.Civ.P. 50(a) for a directed verdict in its favor on the ground that the patent in suit was invalid as a matter of law. Defendants' motion for directed verdict was denied and the case submitted to the jury, because the Court believed that the legal issues raised warranted a thorough study which could be made more carefully, if necessary, upon a motion for judgment notwithstanding the verdict. Stallman v. Casey Bearing Co., D.C., 144 F.Supp. 927 (1956). The jury subsequently found in favor of the plaintiff and awarded damages. Defendant thereafter timely filed a motion for judgment n. o. v. pursuant to F.R. Civ.P. 50(b). An appraisal of the entire record in the light of the oral and written argument upon the motion combined with a careful consideration of the recent Supreme Court decision in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) and the more recent Ninth Circuit decision in Brooks Walker v. General Motors Corp. (April 19, 1966) 362 F.2d 56 (both decisions rendered subsequent to the trial in this action) compels the conclusion that the patent in suit is invalid as a matter of law and that the jury verdict must be set aside and judgment entered for defendant. Griffith Rubber Mills v. Hoffar, (9th Cir. 1963) 313 F.2d 1.

The patent in suit, No. 2,887,250 is a bar dispensing apparatus issued to plaintiff, Carl Zilk on May 19, 1959 by the U. S. Patent Office. This application, Serial No. 695,870 for Dispensing Apparatus was filed November 12, 1957 by Plaintiff Zilk. The patent in suit (hereinafter "Zilk patent") is basically an apparatus for dispensing a plurality of bar mixes including soda and flavored soft drinks such as 7-Up, Coca Cola, etc. The patented construction includes a dispensing head attached to one end of a flexible hose. Finger operated electrical push buttons on the head actuate bar mounted valve means to supply any one of several bar mixes to the head. By depressing a push button on the head an operator can with one hand dispense one or several bar mixes from a nozzle in the head into a drink glass.[1]

The defendants urge two major grounds for reversal of the jury's decision.[2] First of all, the defendants contend that the Zilk patent does not meet the overall standard of invention established by the Supreme Court in 1950 in Great Atl. & Pac. Tea Co. v. Supermarket Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 and reaffirmed by its recent decision in Graham v. John Deere, supra.[3] In the Great Atl. & Pac. Tea Co. case the Supreme Court laid down the rule that the ultimate question of patent validity is one of law and that the legal standard for invention requires that where old elements are arranged in a new fashion the result must be *"unusual and surprising consequences"* (emphasis supplied). This Court agrees that as a matter of law and for reasons stated below, the Zilk invention fails to meet the general level of innovation necessary to sustain patentability. The patent in suit is therefore invalid. Graham v. John Deere, supra, p. 4, 86 S.Ct. 684;

1. "It is the main object of the invention to provide a dispensing apparatus of the movable head type in which the valves may be controlled by the hand of the operator which supports the head." Zilk Patent No. 2,887,250, Plaintiff Ex. 1.

2. Defendants included grounds for a new trial in their motion as an alternative motion.

3. Graham v. John Deere Co., supra (1966) at p. 19, 86 S.Ct. p. 694.
"Although we conclude here that the inquiry which the Patent Office and the courts must make as to patentability must be beamed with greater intensity on the requirements of § 103, it bears repeating that we find no change in the general strictness with which the overall test is to be applied. We have been urged to find in § 103 a relaxed standard, supposedly a congressional reaction to the 'increased standard' applied by this Court in its decisions over the last 20 or 30 years. The standard has remained invariable in this Court." [The Court was referring to its cases applying the increased standard of which Great Atl. & Pac. Tea Co. is a leading case].

Great Atl. & Pac. Tea Co. v. Supermarket Corp., supra.

Secondly and as a separate ground for reversal, defendants contend that the Zilk invention as a matter of law does not elude the obviousness hurdle established by 35 U.S.C. § 103.[4] The issue of obviousness or non-obviousness is basically a question of fact (Graham v. John Deere, supra at p. 15, 86 S.Ct. 684) which the jury in this case determined in favor of the plaintiff on all eight claims. Special Interrogatories Nos. 2, 4, 6, 8, 10, 12, 14, 16. This Court is mindful of the deference due to a jury finding of non-obviousness.[5] However, a full review of the scope and content of the prior art on the claims at issue, and the level of ordinary skill in the art, lead this Court to the inescapable conclusion that no reasonable jury could have concluded that the Zilk invention was non-obvious to one skilled in the bar-dispensing art in July, 1957. Accordingly, the jury findings on the Section 103 issues must be set aside and resolved in favor of the defendant. Griffith Rubber Mills v. Hoffar, supra, Cf. Brooks Walker v. General Motors, supra (motion for summary judgment).[6] Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235; Cee Bee Chem. Co. v. Delco Chemicals Inc., 9 Cir., 263 F.2d

150 at 153, Cf. Monroe Auto Equipment Co. v. Heckethorn Mfg. Co., 332 F.2d 406 (6th Cir. 1964).

An explanation of the reasons for granting Defendants' motion for judgment n. o. v. on the dual grounds stated above, requires a survey of the prior art and a more thorough discussion of the Zilk patent in suit. The Supreme Court in Graham v. John Deere Co., supra, 383 U.S. p. 17, 86 S.Ct. p. 694, sets out the guidelines for determination of issues under Section 103:

"While the ultimate question of patent validity is one of law, Great A & P Tea Co. v. Supermarket Corp., supra, 340 U.S. at p. 155, 71 S.Ct. 131, the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

The scope of the prior art in the bar-dispensing field was fully explored at trial and in the briefs submitted to the Court. Foremost of the prior art de-

---

4. 35 U.S.C. § 103 provides: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in Section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

5. Instruction No. 16 to the jury read as follows: "If you find that the differences between the claimed Zilk invention and the Wheco and Magic Wand devices are such that the claimed invention as a whole may have been obvious in July, 1957, to a person of ordinary skill in the bar dispensing art, you shall hold the Zilk patent invalid and return a verdict for defendants."

6. In Brooks Walker v. General Motors, supra, Browning, J. made the following comment: "It is true that obviousness must be determined against a factual background. * * * If the material facts are not disputed, and if on these undisputed facts the difference between the alleged invention and the prior art would have been obvious, a summary judgment of invalidity for lack of invention is entirely proper." This Court recognizes that the standards for granting a summary judgment and judgment n. o. v. are different in degree. However, in both situations the judge must be convinced that no real disputable issue of fact exists. If the issue of obviousness or non-obviousness lends itself in certain cases to disposal by summary judgment, it follows that a judgment n. o. v. or directed verdict may likewise be appropriate in certain circumstances.

vices relied on by defendant is the Bar-Master "Magic Wand" Def. (Exhibit F-D) which Plaintiff Zilk had before him when he made the patented invention. The Magic Wand is a type of bar dispenser with a *bar-mounted* push button valve block incorporating a series of electrical switch buttons. (See appendix) By depressing the designated electrical button with one hand and grasping the movable head with the other, the bartender is able to dispense any one of a plurality of mixes in a two handed operation. Additionally during the period prior to the Zilk invention in July, 1959, another beverage dispensing apparatus variously known as "Speed Bar" or "Wheco" dispenser was in use in the Portland area. (Defendants' Exhibit B, See Appendix). The Speed Bar device included a beverage dispensing head in which a valve handle was mounted *on the head* to permit the user to control dispensing of a beverage with the hand that held the dispensing head.[7] However, the operator or bartender could dispense only soda or only a single flavored carbonated beverage from each handle. To dispense more than one, the operator was required to manipulate additional hoses.

The essence of plaintiffs' contention of validity is that the patented device (with a series of push buttons mounted on the flexible head) is a new combination of "old" elements which cooperate in a way to accomplish a result not obtained by any prior art dispenser; to wit, one-handed selective dispensing of a plurality of fluids *without* the necessity of changing the grip of that hand.

In addition to the functional improvement in operation (one-handed dispens-)

ing) plaintiff offered evidence and testimony intended to establish that the Zilk patent incorporated certain technical advancements over prior art dispensers such as "Wheco", "Speed Bar", and the "Magic Wand". The push buttons were trimmed in size and regrouped in a manner to accomplish the function of one handed operation without change of grip. (Not possible with the larger push button on the "Magic Wand" bar-mounted valve block.) Secondly, the electrical switches were made more compact and relocated along the hose with electrical wires running to said switches. Furthermore, means were provided whereby the conduits and flexible conductors were held together in contiguous fashion.[8]

In the final analysis, the only notable difference between the Zilk patented device and the prior art devices referred to, is the one-handed selective dispensing of a plurality of fluids without the necessity of changing the grip of that hand. The "Magic Wand" device dispensed a plurality of fluids from a bar-mounted valve block containing electrical push buttons. The "Wheco" or "Speed Bar" device dispensed a single fluid by depressing a valve handle mounted on the head. All, that Zilk did was to conceive the idea of moving or relocating the switch buttons from their counter-mounted position on the "Magic Wand" to the handle at the end of the wand or flexible hose as had been done in the "Wheco" device with a single button. Even if the ordinary skill possessed by persons engaged in the bar-dispensing field were postulated at the minimum conceivable level, Zilk's dispensing de-

---

7. Defendant also cites a number of dispensing devices ranging from dishwashing gadgets to cleaning fluid dispensers in which operation buttons were mounted on the handle of a flexible hose so that the dispenser could be operated by the thumb of the hand which held the handle. e. g. Buttner Patent, Ex. 0–1, Lingard Patent Ex. 0–3, Lewis Patent, Ex. 0–9, etc. (non-cited patents).

8. Claim 1 of the Zilk Patent includes the following elements " * * * said push-

button being grouped on said handle to provide for operation of any push-button by a thumb or finger of said one hand of the operator without changing the grip of such one hand on the handle." " * * * switch means carried by said handle to control the supply of electrical energy to said power means." " * * * means holding said conduits and flexible conductors together in contiguous fashion." (Plaintiffs Ex. 1)

vice would clearly have suggested itself as a possible solution to a person possessing such skill who was given the "Wheco" and "Magic Wand" device and told to alter it in such a way as to provide for one handed dispensing of a plurality of fluids. Brooks Walker v. General Motors Corp., supra, p. 460. The public is certainly entitled to the benefits, without paying monopoly prices, from such advances as normally flow from the application of the ordinary skills of one in the trade to the existing fund of public knowledge. Griffith Rubber Mills v. Hoffar, supra. It follows that though a device such as the Zilk patent may be a useful improvement, it is not patentable if it consists of no more than a combination of functions drawn from the existing fund of knowledge provided by the "Wheco", "Magic Wand", and other dispensing apparati.

The technical alterations once the idea was conceived were minor indeed. Plaintiff conceded in its brief that the Zilk device was "not difficult to build once it was conceived." (Plaintiffs' memorandum in opposition to defendants' motion for judgment n. o. v., p. 2). There was no inventive distinction in trimming the push button size, or running the electrical wires along the hose, or in relocating the electrical switches instead of the valves themselves.[9] The prior art as a whole clearly taught that valve buttons and valve switches could be mounted on the handles of wand type dispensers to make the dispensers easier to use. The differences in the Zilk patent were insubstantial and unpatentable. Plaintiff did offer evidence of unsatisfied need and the commercial success of the Zilk patented device. There was testimony that the Wheco and Bar Master devices were generally abandoned in favor of the Zilk device and its progeny when they became available on the market. However, as the Supreme Court has said, these factors are only "secondary considerations" which may provide "indicia of obviousness" where that issue is in doubt. Graham v. John Deere, supra, 383 U.S. at p. 17, 86 S.Ct. 684; Brooks Walker v. General Motors, supra, p. 460. Where invention is clearly lacking in a particular device, the commercial success of such device cannot fill the void, that is to say, commercial success may not be taken as a substitute for invention. Jaybee Manufacturing Corp. v. Ajax, 9 Cir., 287 F.2d 228. It cannot be used to raise a popular and needed device to the level of invention where as here obviousness is clear.

The Court therefore concludes that despite the fact that a small amount of objective evidence of non-obviousness was tendered, Cf. Griffith Rubber Mills v. Hoffar, supra, (and taking fully into account the factors of secondary consideration such as unsatisfied need and commercial success), the jury was unreasonable in finding that the Zilk patent was non-obvious. As a result the Zilk patent is invalid as a matter of law in that it clearly does not meet the statutory mandates established by 35 U.S.C. § 103.

Entirely separate from the Section 103 issue, the Zilk concept does not meet the Great Atl. & Pac. Tea Co. standard of invention. The evidence in this case failed completely to show that by the arrangement of old elements, plaintiff obtained any "unusual or surprising consequences" from his combination as called for in the Great Atl. & Pac. Tea Co. decision. (Reaffirmed in Graham v. John Deere, supra.) All that Zilk achieved was a more convenient location for the switch buttons permitting a one handed operation, which was possible with a single fluid in the "Wheco" device. It has long since been the law that mere relocation of an element of an old combination does not amount to patentable invention. Photochart, et al. v. Photo Patrol, et al., 9 Cir., 189 F.2d 625. Weyerhauser Tim-

---

9. The prior art in other types of dispensers teaches the technique of relocating electrical switches onto the wand of the dispenser and running wires thereto. Carter Patent (Def. Ex. 0–2), Brown Patent (Def. Ex. M), Miller Patent (Ex. 0–7) (Carter and Miller patents noncited).

ber Co. v. Royal Container Co., 128 U.S. P.Q. 70, 71. This maxim holds true regardless of how useful or convenient the relocation is. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. This issue is so clear in light of the long line of judicial precedents that it may properly be resolved as a matter of law by the Court.[11]

Accordingly, the motion for judgment n. o. v. is granted and judgment is entered for defendants.

---

11. The Great Atl. & Pac. Tea Co. test was not submitted to the jury in the instructions as the standard for invention be-cause of the confusion over the possible preemption by Section 103, preceding the *Graham* decision.